CARY CREEK LIMITED PARTNERSHIP, Petitioner v. TOWN OF CARY, NORTH CAROLINA, Respondent

No. COA10-38

(Filed 5 October 2010)

**1. Cities and Towns— denial of variance—superior court review—findings of fact not prejudicial—scope of appellate review**

The superior court did not err in affirming the decision of respondent Town of Cary which denied petitioner's request for a variance. Although the superior court was without authority to make additional findings of fact, the superior court's inclusion of such findings was not prejudicial error. The Court of Appeals declined to consider whether the superior court's findings were supported by competent evidence because the scope of appellate review was limited to whether the evidence before the town board supported its action. The Court of Appeals also declined to consider petitioner's challenge to the Town's procedure because petitioner failed to raise the issue in its petition for writ of *certiorari.*

**2. Cities and Towns— denial of variance—appellate review— whole record test**

Petitioner's argument that the Town of Cary's denial of a variance from the riparian buffer requirement was not supported by competent, material, and substantial evidence was overruled because the whole record test did not allow the Court of Appeals to replace the Town's judgment.

**3. Zoning— denial of variance—town's findings sufficient**

The Town of Cary's findings, which served as the bases for its denial of petitioner's variance request, were sufficient to inform the Court of Appeals of what induced the Town's decision, and the superior court, correctly applied *de novo* review to this issue.

Appeal by petitioner from judgment entered 10 August 2009 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 17 August 2010.

*Robertson, Medlin & Bloss, PLLC, by John F. Bloss, and Smith Moore Leatherwood LLP, by Marc C. Tucker, for petitioner-appellant.*

CARY CREEK LTD. P'SHIP v. TOWN OF CARY

[207 N.C. App. 339 (2010)]

*Town of Cary, by Lisa C. Glover, Assistant Town Attorney, and Womble Carlyle Sandridge & Rice, by Michael T. Henry, for respondent-appellee.*

MARTIN, Chief Judge.

Petitioner appeals from the superior court's order affirming the decision of the Town of Cary, North Carolina, which denied petitioner's request for a variance. We affirm the superior court's order.

Petitioner Cary Creek Limited Partnership owns an approximate 108-acre tract of land in Cary, North Carolina. This case arises from petitioner's attempt to obtain a variance from an ordinance enacted by respondent Town of Cary establishing riparian buffers within which no development may occur. We previously issued an opinion in a related dispute, *Cary Creek Ltd. Partnership v. Town of Cary,* —— N.C. App. ——, 690 S.E.2d 549 (2010), where we affirmed the trial court's grant of summary judgment to the Town on the issue of whether the ordinance was preempted by State law, and reversed on the issue of petitioner's inverse condemnation claim because it was not yet ripe.

Petitioner's tract is located near the intersection of Highway 55 and Alston Avenue in the Town of Cary. The tract is located within the Alston Activity Center Concept Plan ("AACCP"), a comprehensive development plan adopted by the Town of Cary in 2006. The northern portion of petitioner's tract is bordered by a perennial stream known as the Nancy Branch, which is located within the Cape Fear River Basin. Also on petitioner's tract, perpendicular to the Nancy Branch, are two intermittent streams—drainage areas that flow only during wet seasons—that are at the heart of this dispute.

The Town of Cary has a series of ordinances known collectively as its Land Development Ordinance ("LDO"). On 17 November 2006, the LDO included § 7.3, entitled "Stormwater Management."[1] Stormwater Management § 7.3.2 required 100-foot-wide riparian buffers on either side of all perennial and intermittent streams and 50-foot-wide riparian buffers adjacent to other surface waters.

On 17 November 2006, petitioner submitted an application requesting a variance from riparian buffer requirements pursuant to § 7.3.7. Petitioner sought to fill in two riparian areas and "develop

---

1. The Town has since revised its ordinances. The parties have stipulated that petitioner's development is subject to the previous ordinance scheme in place when petitioner filed its sketch plan.

CARY CREEK LTD. P'SHIP v. TOWN OF CARY

[207 N.C. App. 339 (2010)]

[its] Site into a commercial retail center with a residential component." Petitioner contended that the variance was necessary "to meet the desired higher-density development called for in the AACCP, and to make development of the site commercially feasible." Petitioner's sketch plan indicated that parts of two buildings and a parking area, as well as half of a street, would be located within the protected riparian buffer areas. At the time it submitted its application, petitioner had already received approval from the U.S. Army Corps of Engineers and the North Carolina Department of Environmental and Natural Resources, Division of Water Quality, which regulate the water in those areas, to fill in the two intermittent streams.

On 26 April 2007, the matter came before the Town Council. After hearing the evidence, council member Portman proposed several findings of fact and moved to deny petitioner's request for a variance. The council briefly discussed the motion and voted four to one to adopt it and deny petitioner's request. On 29 May 2007, petitioner filed a verified petition for a writ of certiorari in the Superior Court of Wake County requesting, among other things, that the superior court enter an order reversing the denial of petitioner's application for a variance and directing the Town of Cary to issue the variance. On 10 August 2009 the superior court entered judgment affirming the council's decision.

I.

[1] Petitioner first contends the superior court erred by making findings of fact, and contends those findings are not binding on this Court. Petitioner then challenges two such findings, arguing that they are unsupported by the evidence.

Judicial review of the decisions of a municipal board of adjustment in the superior court is authorized by N.C.G.S. § 160A-388. N.C. Gen. Stat. § 160A-388(e2) (2009) ("Every decision of the board shall be subject to review by the superior court by proceedings in the nature of certiorari."). In reviewing a decision of a board of adjustment, the superior court should

(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is

supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*Wright v. Town of Matthews*, 177 N.C. App. 1, 8, 627 S.E.2d 650, 656 (2006) (internal quotation marks omitted).

We agree with petitioner that while sitting as an appellate court, the superior court was without authority to "make additional findings." *Batch v. Town of Chapel Hill*, 326 N.C. 1, 11, 387 S.E.2d 655, 662, *cert. denied*, 496 U.S. 931, 110 L. Ed. 2d 651 (1990); *see also Deffet Rentals, Inc. v. City of Burlington*, 27 N.C. App. 361, 364, 219 S.E.2d 223, 226 (1975) ("It is not the function of the reviewing court . . . to find the facts but to determine whether the findings of fact made by the Board are supported by the evidence before the Board and whether the Board made sufficient findings of fact."). But we have also recognized that "a recitation of largely uncontroverted evidence" by a superior court in reviewing a local decision is not prejudicial error. *Cannon v. Zoning Bd. of Adjust. of Wilmington*, 65 N.C. App. 44, 47, 308 S.E.2d 735, 737 (1983). Although the superior court's order contains 38 findings, those findings recite the council's findings of fact and synthesize the evidence before the council. Therefore, the superior court's inclusion of such findings within its order was not prejudicial error. *See id.*

In urging our review of two such findings, petitioner misapprehends the scope of our review. Our review is limited to determining "whether the trial court correctly applied the proper standard of review." *Wright*, 177 N.C. App. at 8, 627 S.E.2d at 657. "[T]he question is not whether the evidence before the superior court supported that court's order but whether the evidence before the town board was supportive of its action." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Nags Head*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). Thus, we decline to consider whether the superior court's findings are supported by competent evidence.

We further note that after careful examination of petitioner's arguments on this issue, it appears petitioner's challenge to what is labeled as the superior court's Finding of Fact 34 is in substance a challenge to the council's procedure. In Finding 34, the superior court listed the findings contained in the proposed motion the council voted to adopt. Petitioner's argument is that "[n]o such motion was before the Council." Thus, petitioner appears to challenge the council's procedure, which requires *de novo* review. *Turik v. Town of Surf City*, 182 N.C. App. 427, 430, 642 S.E.2d 251, 253 (2007). However, even

if we were to consider the substance of petitioner's argument, we note that we would nevertheless be precluded from reviewing it because petitioner failed to raise that issue in its petition for a writ of certiorari in the superior court, and we may only consider "those grounds for reversal or modification argued by the petitioner before the superior court." *Amanini v. N.C. Dep't of Human Res.*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118 (1994) (internal quotation marks omitted). Accordingly, we do not address this argument on appeal.

II.

[2] Petitioner's next argument is that the "Town's denial of the variance from the riparian buffer requirement was not supported on the record by competent, material, and substantial evidence." However, under this argument heading, the body of petitioner's brief mainly discusses how petitioner "demonstrated that its proposed development would satisfy all of the factors" of § 7.3.7. Petitioner again misapprehends the scope of this Court's review.

> In examining either the sufficiency of the evidence or whether the board's decision was arbitrary and capricious, the trial court applies the whole record test. The whole record test requires the reviewing court to examine all the competent evidence . . . which comprises the whole record to determine if there is substantial evidence in the record to support the [quasi-judicial body's] findings and conclusions. The whole record test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*.

*Nw. Prop. Group, LLC v. Town of Carrboro*, —— N.C. App. ——, ——, 687 S.E.2d 1, 6 (2009) (internal citations and quotation marks omitted).

On several pages of its brief, petitioner urges this Court to review the record for evidence that its request for a variance should have been granted.[2] We decline to do so. *See id.* ("The whole record test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views[.]"). Although petitioner also

---

2. Petitioner states that it "offered material, competent and substantial evidence establishing practical difficulties and unnecessary hardships, and the record contains evidence that supports the conclusion that [its] application should have been granted[;]" that it "established the existence of facts and conditions required for the approval of the [a]pplication[;]" and that its "[a]pplication demonstrated that its proposed development would satisfy all of the factors which are set forth in . . . 7.3.7."

states that "[n]o evidence was presented to support any conclusion other than granting the [a]pplication," petitioner fails to challenge any of the council's findings as unsupported by competent evidence or to direct the Court to relevant pages in the record supporting this statement, and "[i]t is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein." *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358, *supersedeas denied and disc. review denied*, 360 N.C. 63, 623 S.E.2d 582 (2005).

## III.

[3] Finally, petitioner contends the council's findings were "confusing" and "inconsistent" and prevent "adequate review by this Court." Petitioner also contends the council "relied on evidence and factors not in the record or [in] its ordinance" in denying petitioner's request for a variance. We disagree.

"Findings of fact are an important safeguard against arbitrary and capricious action by the Board of Adjustment because they establish a sufficient record upon which this Court can review the Board's decision." *Crist v. City of Jacksonville*, 131 N.C. App. 404, 405, 507 S.E.2d 899, 900 (1998). "[T]he Board must set forth the basic facts on which it relied with sufficient specificity to inform the parties, as well as the court, what induced its decision[.]" *Through The Looking Glass, Inc. v. Zoning Bd. of Adjust. for Charlotte*, 136 N.C. App. 212, 216, 523 S.E.2d 444, 447 (1999).

The council's minutes contain the following proposed findings of fact, which the counsel adopted by a vote of four to one:

[T]he applicant proposes eliminating all zones of buffer in certain areas and impacting a total of 195, 508 square feet of buffer overall, approximately 4.5 acres, and has not shown an attempt to minimize the impact.

The applicant states that the need for the variance is driven by collector streets and design standard requirements; however, there is an opportunity to modify the collector street requirements which has not be pursued, and the applicant has not established which design standards are causing the need for encroachment. The buffer reduction is not appropriate until the measures have been taken, including any modifications to street requirements.

The applicant states that the buffer elimination reduction [sic] is required to meet higher density development and the required

design criteria. However, there is no specific density of development that must be met by the applicant's development, and staff has developed concept plans to protect the buffer to a greater extent and meet these goals.

Applicant has presented evidence that it has obtained federal and state permits to impact streams, however, the permits do not address the concerns protected by the Town LDO.

The . . . [AACCP] shows significant buffer preservation and a concept that includes considerable preservation of buffer, taking into account road connections, and there is evidence that alternative designs were examined and do exist.

Applicant is not proposing mitigating meeting the requirements of the LDO. The mitigation areas identified by the applicant are areas that would be preserved in any event. The nitrogen reduction proposed by the applicant is a requirement under the other section of the LDO as indicated in the staff presentation.

The requested variance is not consistent with the spirit, purpose and intent of the LDO because it does not protect riparian buffers, and [sic] important resource to Cary. Further, it will not promote an appropriate balance between the built environment and the preservation of open space and natural environmental resources nor will it protect the high quality appearance, identity and character of Cary.

The requested variance is not consistent with the design guidelines because the applicant was involved in the [AACCP] approval process and was aware of the buffer requirements.

Applicant discusses poor soils but offers no evidence that poor soils caused the need for the buffer encroachment.

The above findings, which served as the basis for the council's denial of petitioner's variance request, are sufficient to inform this Court what induced the council's decision. *See id.* The superior court correctly applied *de novo* review to this issue, and we overrule petitioner's argument on this point.

Petitioner also argues that the council relied on matters outside the record in denying its request for a variance. Petitioner contends council member Portman "explicitly admitted that the basis for his motion to deny the Application was not based on whether Cary Creek met all of the requirements for a variance, but rather political con-

siderations," and points to Mr. Portman's statement that "the reason that I made the motion is the precedent . . . as it relates to all of the other people who have respected riparian buffers. . . . I'm worried about a sense of fairness to those who have complied." Petitioner also argues that the council's decision was improperly based on the amount of acreage involved, unfairness to other developers, and mitigation.

Contrary to petitioner's argument, § 7.3.7 required consideration of those matters. Section 7.3.7(A)(8) required that the council determine whether "[t]he requested variance . . . will preserve substantial justice." The council was therefore permitted to consider whether it would be fair to other developers to grant the variance request. Several subsections of § 7.3.7(A) also required consideration of the size of land for which the applicant requests the variance. *See* Town of Cary, N.C., Land Development Ordinance §§ 7.3.7(A)(1)-(4), (6) (2006). Finally, § 7.3.7(A)(9) required that the council determine whether petitioner proposed mitigation. Petitioner's contention that the council considered matters outside of the evidence and beyond the criteria of the ordinance is therefore without merit.

Affirmed.

Judges HUNTER and CALABRIA concur.