TURIK v. TOWN OF SURF CITY

[182 N.C. App. 427 (2007)]

_____

SCOTT TURIK, D.D.S., MARY S. TUCKER, LANA S. WARLICK, AND HUSBAND, ROBERT WARLICK, PETITIONERS v. TOWN OF SURF CITY AND TOWN OF SURF CITY BOARD OF ADJUSTMENT, RESPONDENTS

No. COA06-141

(Filed 3 April 2007)

## 1. Zoning— variance—whole record test—findings of fact

The superior court properly applied the whole record test and did not substitute its judgment for that of the Board of Adjustment when it affirmed respondent Board's granting of a zoning variance of approximately 7.2 inches to the Hunters where the court essentially repeated the Board's findings and summarized the procedural history of the case.

## 2. Zoning— variance—literal enforcement would result in unnecessary hardship

The superior court did not err by upholding a zoning variance even though petitioners contend respondent Board of Adjustment's decision was arbitrary and capricious, and unsupported by competent evidence in the record, because there was sufficient evidence in the record to support the Board's finding that literal enforcement of the ordinance would result in an unnecessary hardship for the Hunters when: (1) only after the construction permit was granted and construction had begun were the Hunters notified that there was a possible discrepancy between the property lines indicated by their survey and the property lines indicated by their neighbor's survey; (2) there was no indication that granting the variance would harm neighboring properties or structures, nor would the variance give any special privileges to the Hunters; and (3) the Board followed the procedures for granting a variance as outlined in the ordinance.

**3. Zoning— variance—strict application of ordinance—pecuniary loss an unnecessary hardship**

The superior court did not err by concluding the Board of Adjustment's decision regarding whether strict application of the ordinance would create an unnecessary hardship to the Hunters was not based solely upon the potential pecuniary loss to the Hunters, because: (1) to determine whether a parcel of property suffers from unnecessary hardship, findings of fact and conclusions of law must be made as to the impact of the ordinance on the landowner's ability to make reasonable use of his property; (2) there was no testimony that neighboring property would be damaged if the variance was granted for 7.2 inches; (3) there was no independent circumstances which may have made it difficult to conduct an accurate survey of the Hunters' property or any showing that the Hunters' survey was in fact inaccurate; (4) the Board considered other factors in addition to the apparent pecuniary loss the Hunters would suffer if their variance request was denied; (5) the Hunters followed the necessary procedures to obtain a building permit before they began construction on their property and the hardship that the Hunters faced was not one of their own making; and (6) the variance requested by the Hunters was not directly contrary to the ordinance and did not conflict with the general purpose of the ordinance.

Judge JACKSON concurring in a separate opinion.

Appeal by petitioners from order entered 1 December 2005 by Judge Jay D. Hockenbury in Pender County Superior Court. Heard in the Court of Appeals 13 September 2006.

*Robert W. Kilroy for petitioners-appellants.*

*Lanier & Fountain, by Charles S. Lanier and Trey Carter, for respondents-appellees.*

CALABRIA, Judge.

Scott Turik, Mary S. Tucker, Lana S. Warlick and Robert Warlick (collectively "petitioners") appeal from a judgment affirming the Order of the Town of Surf City Board of Adjustment ("the Board") granting a variance of approximately 7.2 inches to Lloyd D. Hunter and Milton R. Hunter ("the Hunters"). We affirm.

The Hunters are owners of property located at 1220 South Shore Drive, Surf City, North Carolina. The Hunters hired Charles F. Riggs & Associates, Inc. to conduct a survey of the property in preparation for a construction project. According to the survey, the proposed construction complied with zoning requirements. The property is zoned R-10 and subject to a setback of 7.5 feet. The Hunters submitted the survey along with an application for a building permit to the Town of Surf City ("Surf City"). On 8 November 2004, Surf City issued the Hunters a building permit for construction of a duplex ("the Hunters' duplex") on the property.

After the Hunters began construction, Mary S. Tucker ("Ms. Tucker"), the owner of the adjacent property, notified the Surf City Inspections Department ("the Inspections Department") that the piling for the Hunters' duplex did not comply with the setback requirements for R-10 zoned property. Ms. Tucker also submitted a survey to the Inspections Department that was prepared in 1993 by John Pierce ("Pierce"), a licensed surveyor. The property lines on the survey Ms. Tucker submitted differed from the property lines on the survey the Hunters submitted with their construction permit application. Subsequently, Ms. Tucker hired Pierce to conduct another survey of the Hunter property. Pierce's new survey differed from both the 1993 survey and the Hunters' survey.

On 21 February 2005, Charles F. Riggs ("Mr. Riggs") and Wilman Keith Andrews filed an Application for Variance Request on behalf of the Hunters and requested a variance of approximately 7.2 inches from the setback requirements. On 29 March 2005, the Board granted the variance request. Pursuant to N.C. Gen. Stat. § 160A-388(e2), the petitioners filed a petition for writ of certiorari for judicial review of the Board's decision. On 1 December 2005, the superior court affirmed the Board's decision determining that the decision was not arbitrary and capricious and was supported by substantial and competent evidence in the whole record. Petitioners appeal.

"On review of a superior court order regarding a board's decision, this Court examines the trial court's order for error[s] of law by determining whether the superior court: (1) exercised the proper scope of review, and (2) correctly applied this scope of review." *Tucker v. Mecklenburg Cty. Zoning Bd. of Adjustment*, 148 N.C. App. 52, 55, 557 S.E.2d 631, 634 (2001). When reviewing a decision of a municipal board the superior court should:

(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*Knight v. Town of Knightdale*, 164 N.C. App. 766, 768, 596 S.E.2d 881, 883 (2004) (citations omitted). The Board sits as the fact finder, and the Superior Court reviews the Board's findings as an appeals court. *321 News & Video, Inc. v. Zoning Bd. of Adjustment*, 174 N.C. App. 186, 188, 619 S.E.2d 885, 886 (2005).

"When the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test." *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (quotations and citations omitted). "This Court is to inspect all of the competent evidence which comprises the 'whole record' so as to determine whether there was indeed substantial evidence to support the Board's decision." *Showcase Realty and Constr. Co. v. City of Fayetteville Bd. of Adjust.*, 155 N.C. App. 548, 550, 573 S.E.2d 737, 739 (2002). "Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion." *Id.* "However, if a petitioner contends the board's decision was based on an error of law, 'de novo' review is proper." *Mann Media*, 356 N.C. at 13, 565 S.E.2d at 17 (citations and quotations omitted). "Under a *de novo* review, the superior court considers the matter anew and freely substitutes its own judgment for the agency's judgment." *Id.* (citations and quotations omitted).

*I. Whole Record Test*

[1] Petitioners argue that the superior court impermissibly made its own findings of fact when affirming the Board's decision to grant the variance request. We disagree.

The superior court reviewed the Board's decision by applying the whole record test. "The 'whole record' test does not allow the reviewing court to replace the [Board's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*."

*Piney Mt. Neighborhood Assoc. v. Town of Chapel Hill*, 63 N.C. App. 244, 257, 304 S.E.2d 251, 258 (1983). "Further, whether the superior court substituted its judgment for that of the [Board] could not be determinative of the review by this Court, for our task is to review the [Board's] action, not that of the superior court . . . ." *Id.*, 63 N.C. App. at 257, 304 S.E.2d at 259. In this case, the superior court did not substitute its own judgment for that of the Board's, but essentially repeated the Board's findings and summarized the procedural history of the case.

## II. Surf City Zoning Ordinance

[2] Petitioners next argue that the superior court erred in upholding the zoning variance because the Board's decision was arbitrary and capricious and was unsupported by competent evidence in the record. We disagree.

The record indicates the testimony before the Board included testimony from Steve Padgett, a Surf City Building Inspector, Mr. Riggs, and Ms. Tucker. Mr. Padgett testified that the survey submitted with the Hunters' construction permit application complied with the setback requirements for R-10 zoned property. After construction began, Ms. Tucker informed Mr. Padgett that the pilings for the duplex appeared to be too close to the property line. After Ms. Tucker submitted a survey showing conflicting property lines, Mr. Padgett stopped the construction on the Hunters' property.

Mr. Riggs testified that he conducted a survey of the Hunters' property before the construction project began, and the survey did not reveal any discrepancies regarding the property line. Mr. Riggs also testified that he was "one hundred percent confident" that the survey he conducted was accurate.

During Ms. Tucker's testimony, she read a letter from Scott Turik ("Mr. Turik"), an adjacent landowner. In the letter, Mr. Turik stated that the Hunters' property was subject to a deed restriction which prohibited construction of a duplex on the property. Mr. Turik stated that he agreed not to oppose the construction of a duplex on the condition that the required setbacks were not changed. During the remainder of Ms. Tucker's testimony, she stated that after she notified the Inspections Department that the pilings for the duplex appeared to be too close to the property line, the Hunters attempted to reach a compromise with her regarding the property line. However, no compromise was reached. Ms. Tucker never testified about the effect the

variance would have on her property. Specifically, there was no testimony that granting the variance would adversely affect the use of her property or any other properties.

The Surf City Zoning Ordinance ("the Ordinance") provides for a variance when "owing to special conditions a literal enforcement of the provisions of [the] ordinance would result in unnecessary hardship." The Ordinance further requires the Board to make the following findings of fact:

    a) That special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other land, structures or buildings in the same district;

    b) That literal interpretation of the provisions of this ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this ordinance;

    c) That the special conditions and circumstances do not result from the actions of the applicant;

    d) That granting the variance requested will not confer on the applicant any special privilege that is denied by this ordinance to other land, structures or buildings in the same district. [R.p.52]

In it's decision, the Board made the following relevant findings:

    12. That conditions and circumstances exist which are peculiar to the [Hunters'] property in that a boundary line dispute does not exist between other landowners in the same district. That other structures in this district have been constructed with no conflicting surveys which creates a unique situation with this property.

    13. That the special conditions and circumstances of the (sic) this case do not result from the actions of the [Hunters] in that they obtained a valid survey from a surveyor licensed by the State of North Carolina and obtained all applicable permits to construct the duplex on their property.

    14. That no special privilege is being granted to the [Hunters] in that the neighboring property (the Tucker Property) has experienced the same type of setback encroachment since 1993.

15. That the literal interpretation of the said setback requirement would deprive the [Hunters] of their property rights in common and enjoyed by others in the same zoning district in that other property owners are allowed to build on their property upon obtaining building permits issued by the Town pursuant to a valid survey and application for a building permit.

16. That the conflicting surveys have created an unnecessary hardship if the [Hunters] were required to demolish or substantially alter the existing structure which was built by them in good faith and in reliance on their existing property line.

After reviewing the whole record, we hold there is sufficient evidence in the record to support the Board's finding that literal enforcement of the Ordinance would result in an unnecessary hardship for the Hunters.

Prior to beginning construction, the Hunters hired Mr. Briggs to conduct a survey of the property. Mr. Briggs' survey did not indicate any discrepancies regarding the Hunters' property lines. Based on Mr. Briggs' survey, the Hunters applied for a construction permit to build a duplex on their property. Only after the construction permit was granted and construction had begun were the Hunters notified that there was a possible discrepancy between the property lines indicated by their survey and the property lines indicated by Ms. Tucker's survey. Because of the conflicting surveys and because the Hunters and Ms. Tucker were unable to reach a compromise, the Hunters requested a variance of approximately 7.2 inches. This variance would allow the Hunters to continue their construction project that was started only after obtaining a legitimate construction permit. Further, there was no indication that granting the variance would harm neighboring properties or structures, neither would the variance give any special privileges to the Hunters. Based upon the evidence in the whole record, the superior court was correct in affirming the order of the Board because the Board's decision was not arbitrary or capricious and was supported by competent evidence.

Additionally, it is clear from the record that the Board followed the procedures for granting a variance as outlined in the Ordinance. The Board heard testimony from individuals who opposed the variance as well as those who supported the variance. Further, the Board reviewed relevant documents and made findings required by the Ordinance.

*III. Pecuniary Loss as Unnecessary Hardship*

**[3]** Petitioners next argue that the Board's decision regarding whether strict application of the Ordinance would create an unnecessary hardship to the Hunters was based solely upon the potential pecuniary loss to the Hunters and that basis is insufficient to grant a variance. We disagree.

"[I]n the context of zoning, . . . pecuniary loss alone is not enough to show an 'unnecessary hardship' requiring a grant of a variance." *Williams v. N.C. Dep't of Env't & Natural Res.*, 144 N.C. App. 479, 486, 548 S.E.2d 793, 798 (2001) (citations omitted). This Court noted in *Williams* that the Virginia Supreme Court has also held that financial loss alone is insufficient to grant a variance, "but it is a factor or an element to be taken into consideration and should not be ignored." *Id.* In *Williams*, we held that "to determine whether a parcel of property suffers from unnecessary hardship . . . findings of fact and conclusions of law [must be made] as to the impact of the [ordinance] on the landowner's ability to make reasonable use of his property." *Id.* at 487, 548 S.E.2d at 798.

This rule was recently applied in *Showcase Realty*. In that case, the property owner obtained a special use permit to build a storage facility on his land. *Id.* at 549, 573 S.E.2d at 738. The property owner's site plan provided for a front setback of 50 feet and a side setback of 30 feet as required by the City of Fayetteville Zoning Ordinance. *Id.* at 549, 573 S.E.2d at 739. Before the property owner began construction, the City of Fayetteville's Inspection Department ("Inspection Department") conducted an on-site investigation and approved the location where the concrete slabs were to be poured. *Id.* During a subsequent inspection, the Inspection Department questioned the distance from the construction site to the road. *Id.* Upon further investigation, it was discovered that the construction site did not comply with the required setbacks. *Id.* The Inspection Department found that the front setback was only 25 feet and the side setback was only 29 feet. *Id.* Based on the Inspection Department's findings, the property owner requested a zoning variance. The variance was granted by the Board of Adjustment and affirmed by the Superior Court. The petitioner, a neighboring property owner, appealed to this Court. After conducting a whole record review, this Court reversed the Board's decision and concluded that there was insufficient evidence to support the Board's finding of unnecessary hardship. *Id.* at 553, 573 S.E.2d at 741. This Court noted that the only evidence of unnecessary

hardship to the property owner was the pecuniary loss he would suffer by relocating the concrete slabs in order to continue the construction project. *Id.*

*Showcase Realty* is distinguishable from the case before us for several reasons. Most notably, the variance requested in *Showcase Realty* was for a variance of 25 feet. The variance requested in the case *sub judice* was only for a variance of approximately 7.2 inches. Also, in *Showcase Realty*, the adjoining property owner testified that allowing the variance would cause not only a loss of property value but also damage to his property. There was no testimony in the case *sub judice* that neighboring property would be damaged if the variance was granted. Further, the testimony in *Showcase Realty* indicated that it was difficult to determine the location of the shoulder of the road at the time of the initial inspection because of the road construction. In the case before us, there were no independent circumstances which may have made it difficult to conduct an accurate survey of the Hunters' property or any showing that the Hunters' survey was in fact inaccurate. Additionally, unlike *Showcase Realty*, the Board in the case before us considered other factors in addition to the apparent pecuniary loss the Hunters would suffer if their variance request was denied.

The case before us is also distinguishable from other cases in which our Courts have affirmed an order denying a variance request. In *Robertson v. Zoning Bd. of Adjust. for City of Charlotte*, 167 N.C. App. 531, 605 S.E.2d 723 (2004), this Court affirmed an order denying the petitioners' variance request where the petitioners created their own hardship by not requesting a sixty-percent variance before building a fence and the petitioners' hardship was "personal in nature" because it arose out of a dispute between neighbors. *Id.* at 535, 605 S.E.2d at 726. Likewise, in *Donnelly v. Bd. of Adjustment of the Village of Pinehurst*, 99 N.C. App. 702, 394 S.E.2d 246 (1990), this Court affirmed the denial of a variance request where the petitioner requested a variance after he built a fence on his property and a variance allowing the fence to remain on the petitioner's property was directly contrary to the applicable zoning ordinance. *Id.* at 708, 394 S.E.2d at 250. In the case before us, the Hunters followed the necessary procedures to obtain a building permit before they began construction on their property and the hardship that the Hunters faced was not one of their own making. Further, the variance requested by the Hunters was not directly contrary to the Ordinance and did not conflict with the general purpose of the Ordinance.

Upon thorough review of the whole record, we hold the Board's decision was based upon competent evidence and was not arbitrary or capricious. The Order of the Board is affirmed.

Because petitioners failed to present any authority in support of assignments of error numbered VII and XI, these assignments of error are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6) (2006).

Affirmed.

Judge GEER concurs.

Judge JACKSON concurs in a separate opinion.

JACKSON, Judge concurring in a separate opinion.

I concur with the majority's decision to affirm the instant case. However, with respect to issue I, I believe that we must reiterate to the court below that when a trial court reviews a decision of a municipal board, it does so in the role of an appellate court and may not make additional findings of fact. *See 321 News & Video, Inc. v. Zoning Bd. of Adjust. of Gastonia*, 174 N.C. App. 186, 188, 619 S.E.2d 885, 886 (2005). In the instant case, the trial court made several additional findings of fact which were not contained in the Board's decision, including:

> 4. That Charles F. Riggs & Associates, Inc. is a licensed professional land surveyor.
>
> . . . .
>
> 10. That Tucker submitted to the Town of Surf City a survey which was prepared in 1993 **by a licensed professional land surveyor John Pierce**, which survey conflicted with the recent survey submitted by the Hunters with their application for a building permit.[1]
>
> . . . .
>
> 13. That there are three different surveys done by two different licensed professional land surveyors which each show a different property line between the subject property and the

---

1. Bolded text indicates portion of finding that is in addition to findings of the Board.

adjoining property, and the exact location of the property line cannot be determined.

. . . .

15. That the cantilever of the residence located on the adjoining property owned by Tucker encroaches two (2) feet within the sideline setback for the subject property.

Although these additional findings of fact are not contrary to the findings of the Board, nor do they alter the outcome of this case, they still are improper. However, as our task is to review the Board's decision, not that of the superior court, I would hold that the additional findings of fact, while improper, do not affect the ultimate result. *See Piney Mt. Neighborhood Assoc. v. Town of Chapel Hill*, 63 N.C. App. 244, 257, 304 S.E.2d 251, 259 (1983) (Court affirmed action made by Town Council even when trial court made additional findings of fact which may have been contrary to those made by the Council, but did not substitute its judgment for that of the Council); *cf. Batch v. Town of Chapel Hill*, 326 N.C. 1, 387 S.E.2d 655 (1990) (Court reversed decision of trial court where it made additional findings which were contrary to that of the town council). Therefore, I concur in the majority's decision to affirm the Order of the Board.